Albert Lopez for Sgt. Frank Bellino. May it please the court. For the purpose of qualifying immunity, the dispositive inquiry in this case is whether a reasonable police officer, clear for a reasonable police officer, Sgt. Bellino's position that it was unlawful for him to shoot at an unarmed, non-dangerous person that is fleeing to him, at least as to the claim that he shot a fleeing suspect. The problem with the judge's conclusion that there was a fleeing person is that there is nothing more to it. Absolutely nothing more to it. If you're going to measure Sgt. Bellino's conduct against a clearly established law, that is, that the person is fleeing from the police officer, and Tennessee v. Guardian says you cannot do that unless you have reason to believe that the person poses a threat of injury to you or somebody else, then you cannot shoot somebody to prevent him from escaping. Counsel, what do you say to whether we have jurisdiction here? The district judge found there were disputes of material fact. We cannot decide whether, in fact, there were disputes of material fact, usually. Give me your take on why we have jurisdiction to consider this denial of qualified immunity. As to the claim that he was fleeing, the court could not have reached that conclusion unless he reviewed the video. And by reviewing the video, that was the only source where he could have reached that conclusion, and then he explained. The pleadings do not state that claim or that theory that Mr. Guerra was fleeing at the time he was shot. The third amendment, three times where the amendment is not there. There were two motions for summary judgment, and in neither of the responses, that allegation was made. Before this court, you review pretty carefully the brief, although it is stated by the plaintiffs at the beginning of the brief that that's an issue of fact. But there is nothing, nothing in terms of fact that would show that Sergeant Bellino violated a clear constitutional claim. So what is the answer to Judge Southwick's question? We have jurisdiction because there isn't a material fact issue, or why do we have jurisdiction? It's kind of twofold. First, because he based his decision on the video. So under Scott v. Harris, you can review the video to make a determination whether that claim is utterly false. Well, it gives — it's an exception to the rule that when there is a disputed issue and there is a video, then you give more weight to what is shown in the video than to what the plaintiffs are — Are you saying the video is conclusive on the question of whether or not he was fleeing? I'm trying to get to — Yes. Well, it's not. That's the issue. If you don't have — the basic issue is, what are the — So an inconclusive video leads to the result that — That there is no evidence that there was a violation of clear constitutional — Well, there's evidence. It's inconclusive, perhaps. No, no. It's not inconclusive. There is none. In order for Sergeant Bellino to have violated — Well, indulge me. Let's assume I find it inconclusive. What do I do? Inconclusive as to what, sir? As to whether or not he was fleeing. That's the question, right? Well, my question is then, how did Sergeant Bellino know that he was fleeing? You know, qualified immunity, it has to be clear to him, based on the factual basis, that Mr. Guerrero was fleeing. Let's tie this back, Mr. — excuse me, Mr. Lopez. Under the collateral order doctrine, this Court has jurisdiction to hear a defendant's immediate appeal of an idle summary of qualified immunity, and to the extent it turns on a question of law. But where the district court has found that a material issue of fact exists, we can only review the material — materiality, not the genuineness of the factual dispute. So we might look at the record and say, this isn't any real dispute, but the district court found it, and we can't review that. Now, are you saying the video overrides that? And if so, it must clearly show that there cannot be a dispute of material fact about whether he was fleeing or rushing the officer, not that it's inconclusive. I mean, do you agree with that? I agree with that. But this case comes here under a different posture. In order for Sergeant Bellino to have clearly violated a constitutional right, he had to know — he had to know that he was fleeing. That fact, the Court didn't make that determination. So what you're saying is the case — it's not a material fact dispute, so we have jurisdiction, because the issue is not whether or not the gentleman was fleeing when he was shot. The issue is whether the officer could have perceived that he was approaching him. That is — Is that your position? Yes, Your Honor. I'm trying to get to what you're saying. That fact — that fact has to be — is subsumed in the judge's general conclusion that he was fleeing. That he was fleeing, that's the conclusion that he made. But what is the basis of that conclusion? There have to be facts. There have to be facts that Sergeant Bellino was aware — aware that he was fleeing, and with that awareness, he decided — he decided to shoot him, to stop him. But there is absolutely no facts about that. I don't think that it's sufficient that the Court makes the general conclusion, because this Court has always, always required that the summary judgment record show the underlying conduct, the underlying undisputed conduct that shows that it was clear on the — under those circumstances to the officer that his conduct was unlawful. Just merely by saying, well, there's an issue of — an issue with a — with a — he attempted to flee. Well, how did he attempt to flee? How did he attempt to flee? So what does Officer Bellino say about what he saw? What he saw was — what is in the video, what the Court found. He was leaning against — against the hood of the car. All of a sudden, without warning, and after being noncompliant several times, he charged Sergeant Bellino. There is — But Bellino says he charged him. He charged him. The Court found the following. Did the Court hear Bellino testify? Bellino had his statement, and Bellino had his deposition statement.  Yes. All right. And there was a witness to this. And this is what is crucial here. The witness on — So was the Court required to accept Bellino's statement that he believed he was being charged by Mr. Guerra? Was the Court required to accept that? Based on the facts, there is no dispute that he was charging him. Well, the district judge says a fact issue exists as to whether Guerra was rushing the officer or whether he run — attempted to run past him. The fellow across the street, I guess at his house, Malene, is that his name? Yes, Malene. Who was filming it, had some statement that he wasn't sure what he was doing, but this may have been the deposition. I'm not sure he held to that, but it does seem to me the district judge is saying that the video would appear to make it that he was running towards the officer, but for some reason he decided that wasn't conclusive. I'm sorry. Oh, no reason to be sorry. Go ahead. I didn't mean to. But then what is the underlying fact that shows that Bellino, as a matter of law, was aware that something happened there that would have shown to him that he was fleeing? Malene, after reviewing — after a year later, after the incident happened, he witnessed the accident. After a year later, he reviewed the video. He says, I cannot tell. But on the day of the incident, when his neighbor came in and asked him what happened, and he saw the entire incident, shooting incident, he said, man, he charged the cop and the cop shot him. If you read the — sorry, Bellino's statement that was made 7 o'clock, 6 hours later, 7 hours later, after the incident, he uses exactly those same words. He charged on me. I retreated. He closed the distance while he was continuing to charge me. But in that connection, didn't he stick around to hear Bellino talk to the cops who showed up at the scene? I'm sorry, Your Honor. Didn't the man, Mr. Malene, who did the video, didn't he stick around and overhear some of the conversation between Officer Bellino and the other officers who showed up on the scene? Yes. Didn't he do that? Yes, Your Honor. And so he heard — and you correct me if I'm wrong, but my recollection is he heard some of what Officer Bellino said to the other officers, or did he not? Yes, Your Honor. All right. That's all I have. Which means, as I'm sure you picked up, that he heard the version that the officer had, which could have infected — He did part of the — what he says, I couldn't hear everything that was said. Right, but all he needed to hear is that I shot him because the fellow was charging me. Did he say, I did not hear the officer say that? Well, as a matter of fact, there is a recording where Sergeant Bellino says, he charged at me and I shot with a swear word. Okay? And does Malene say, I did not hear that being said by Officer Bellino? I don't believe that he heard exactly that. My recollection is that he didn't — that there is nothing in the record where Malene said that he heard anything that contradict from Sergeant Bellino, that contradicted his own perception. His own perception was he charged the cop and he shot him. That's his own perception. Ultimately, wasn't there earlier a statement from Malene that he couldn't tell which direction he was running? He wasn't — Whether he was running towards the officer or whether he was running away from the officer? That he couldn't tell. That he couldn't tell. But that doesn't mean that he was charging. As a matter of fact, he was asked that in his deposition twice on their very leading questions. And still he says, I couldn't tell because from the video, you could not tell. The judge could not tell whether he was fleeing or not. So isn't that enough to create a question of fact? I'm sorry? He couldn't tell. He said he couldn't tell. Malene. He said he couldn't tell whether he was charging or not. Does a question about a fiction, a supposition, create an issue of fact? The plaintiffs are just fishing on this. There is — independent from that question, there is absolutely nothing, nothing that shows that he was fleeing. As a matter of fact, if you read — if you look at the situation, okay, these are two military men. The judge has a footnote. Two military persons. When in the history of military warfare have you seen a commander say, let's retreat, and instead all his troops go in the direction of the enemy where the guns are? Well, you're talking about a rational, reasonable human being. And I think what we're talking about here is somebody who was unquestionably intoxicated, aren't we? Well, Sergeant Bellino was a rational, reasonable person, and he should be entitled under those circumstances. No, right now I'm talking about whether or not he was fleeing. I don't know whether or not in his intoxicated mind that was a good direction to flee. Well, but is that the issue? I think that the issue is whether Sergeant Bellino perceived that he was fleeing. So it doesn't matter whether or not he actually was fleeing. Is that your point? That's irrelevant, actually. I think that's what you're arguing. It is. It is. The only thing that's relevant is whether the officer perceived a threat, not whether or not the gentleman was really in real life fleeing. Yes. Right? Is that the way it works? Yes, Your Honor. That's the point. And there is not a single piece of evidence in this case that shows that objectively speaking, Bellino was aware that he was fleeing. If that is the case, then Bellino cannot violate a clear lease statute. Well, couldn't he be shooting him even if he was fleeing under our Barnhart case? That under Barnhart, even where a suspect's fleeing, if he posed a threat of bodily harm to the police while he was fleeing, you could still shoot him. Even if he's fleeing. We have two or three cases that say that you can shoot a fleeing suspect if you perceive a threat even at the time of fleeing. I know that's maybe counterintuitive, but we have two or three cases that hold that. It is. Either he's fleeing or he's charging Sergeant Bellino, one or the other. Shoot him either way. That's not a question. I'm just avoiding it. Well, no, because we don't know if he in fact was fleeing. If he had run the other way, we don't know if he would have been shot or not. We don't. And that's the issue as to that. My time ran out, so I'll come back. May it please the Court. I'm Rebecca Weber. I represent Linda Carranza and Joe Guerra, Sr., who were the mother and father of Jose Guerra, who was shot and killed by appellant in October 2012. So as Judge Southwick's questions about jurisdiction intimated, this Court should decline to second-guess Judge Rutledge's three disputed facts that he identified in his opinion and simply dismiss this appeal. However, I would like to address appellant. Let me talk about that, though, because it does seem to me that there is an exception for a video and that the video shows there really is not a material disputed fact. Now, tell me if there's a better way to look at this, not to look at the video. I don't know if there's a good way to look at it. It's just so unclear. But it seems to me the issue is not whether — the issue is whether the officer had any basis to believe he was in danger, regardless of what the victim was doing, which is, I think, the point Judge Elrod was making. If he was fleeing towards the officer or charging the officer, it really doesn't matter. But I thought that the issue, factual, was whether he was going not towards the officer but at some angle away from the car and away from the officer. And I can't tell anything from the video about what's going on. Is that the fact dispute of whether he was actually charging the officer or running at some angle away from the officer? Well, I would like to distinguish Scott v. Harris, but I think what Your Honor is asking is, you know, assume for just a moment that there's another video that shows with clarity the actual direction that he ran and that it shows that he ran directly at the officer. This Court still shouldn't second-guess the second fact dispute that Judge Rodriguez identified, which was that the teenager was not a threat to the officer. So even — either way, so the judge identified three fact issues, whether or not he was going at the officer or fleeing somewhat in the direction of the officer, which was the direction he was going when the officer pulled up. Well, let me ask you about that. It says witnesses to the scene testify that Guerra was not a threat. He had his hands on the hood, leg spread, was visibly intoxicated. But he wasn't that way when he was running in some direction. So this is — I'm not quite sure what the district judge meant by that, but — Well, the district judge — But I would say that that's irrelevant. It's not material whether he was a threat when he had his hands on the hood, leg spread, visibly intoxicated. Was he a threat at the time that he was running, whatever direction he was running? Taking the totality of the circumstances just when he moved quickly. The judge had plenty of other evidence to rely on to rule that there was a fact dispute regarding whether or not Mr. Guerra was a threat. For instance, he had the fact that Guerra was extremely drunk. He was a .286. And the judge even said he was visibly and very drunk. He had been staggering. He had been walking very wobbly, as the witnesses said. There was no evidence that he had a weapon. Three civilian witnesses who — But that's not the relevant inquiry. The inquiry is whether he's approaching the officer at the time that the shot — Well, two responses to that. One is that it's inconclusive, as I think has been said. Well, if it's inconclusive, doesn't the officer win? Because it has to be that no reasonable officer could legally perceive that it was appropriate for him to use deadly force in that circumstance in order to be via the prong two to be satisfied. Respectfully, no. He does not win. First off, it's an objective standard. And second of all, for instance, look at the Supreme Court in Tolan v. Cotton that said the proper framework to look at these cases is not from the officer's perspective, not from his story, which is that I was being attacked. But it has to be what the officer could perceive. I'm very familiar with Tolan v. Cotton, and I don't believe it says anything to the contrary. I'm asking you, does it matter whether he was fleeing or not? Or does it only matter whether the officer thought he was coming in his direction, whether a reasonable objective officer could perceive that he was coming in his direction? And so it wasn't reasonable for the officer to believe that even if he was coming in his direction, that he was a threat who necessitated deadly force. Why is that? And so, well. What case holds that? Because you need a case, and Holsten v. Barnhart seems to be actually to the contrary. The other side doesn't need a contrary case. You need a case that says it's clearly established law that an officer could not use deadly force if someone is approaching him under those circumstances. Well, I think the Supreme Court in the Mullinex v. Luna case, which was actually about whether or not there was clearly established law when the fleeing suspect was in a high-speed vehicle, but that case certainly says that it was established that a fleeing suspect on foot, remember unarmed and half-dressed in this situation and very intoxicated, as Judge Graves pointed out, that unless a reasonable officer would perceive that that person posed a sufficient threat, they cannot use deadly force. And the judge in this case had the benefit of a Pelley's expert, Jeff Noble, who was appalled by this shooting, a 28-year police officer who retired in 2015 as a chief of police, has eminent qualifications. He told the court that Sergeant Bellino ignored his training and chose to use deadly force in a situation where a police officer would have used an intermediate level of force. Which is to say, I would imagine that if an officer was being the same set of facts and he believes he's being charged by an average-sized 12-year-old, and this officer is how big is he? He was 30 pounds more than the teenager. I believe he was 220 at the time. So if the officer is being charged by an average-sized 12-year-old and he's got a gun and the 12-year-old is, in this case, this guy was shorts. He was in no shirt. Shorts and shirtless, jeans and shirtless. He's in tennis, no shirt. So even if he is being charged, there's still a determination to be made about what amount of force is necessary to gain control of the suspect. Absolutely, and that's why Judge Elrod, I don't know if I was saying it correctly, but I believe that the judge can consider, even if he assumes that Mr. Geer was going directly at the officer, he can consider the fact that the officer was a highly trained policeman, 30-year veteran of the police force, and that he was trained in evasive maneuvers. In answering the question, the first prong, of whether or not that level of force was the right level of force under the law, I'm asking you the question about the second prong. What case says that law is clearly established that an officer can't use deadly force under those circumstances? An unarmed fleeing suspect. And I have a case that, in fact, says you can use deadly force on an unarmed fleeing suspect out of this court from 1997 called Colston v. Barnhart. And so I'm wondering what case do you have that says that—and I'm not saying—I'm just saying this is the case and this is what it says. What case do you have? You have to have a case or else you don't win. Besides the Mullinex? Mullinex is a broad case, and, in fact, it came out the other way. Well, it did, but with regards to someone fleeing in a vehicle. Right. It did. So you need a case that says fleeing on foot, unarmed, you can't use deadly force. And I've scoured our circuit to look for that case because I believe that was the answer to this case of whether or not they get summary judgment or not. So can you help me? Do you have a case? I do not have that exact case. What I have is Mason v. Lafayette City Parish Consolidated Government that states that, did the officer have probable cause to believe that the young man posed a threat of serious physical harm? And if he did not, which the district court found there was a fact dispute about, then he cannot shoot him dead. And as the expert said, he should have used an intermediate level of force. That case says you cannot shoot an unarmed person dead. No. I am admitting that I do not know the case that exactly says those exact circumstances. I'm just telling you, you've got to have a case. But Dunaway does say you don't have to have a case clearly on point in order for there to be a finding that the law is clearly established. Is that what Dunaway says? Maybe I've got the wrong case. That's true. I've got the quote right. That's true, Judge Graves, and I believe that's in several cases that, you know, you can't have a case that anticipates every set of facts. Police officers know and are trained that you don't shoot a person unless they present a threat of serious bodily injury to themselves or to others. Okay. So let's get back to the approaching the officer point. Does the video show unmistakably that he is running in the direction of the officer? I've watched it, and it looks like he's running in the direction of the officer. It shows that he starts to move quickly and hits the ground, whether because he tripped, because he was incredibly intoxicated, because, you know, and I invite the court to even assume for the purposes of the appeal that he was heading right at him. He still was not a threat in his incredibly drunken state, his unarmed state, and the fact that the police officer could have stepped to the side and put the vehicle between him and the young man charging or used a come-along hold, used his baton, you know, any of the other tools that he had in his training. So I would like to, if I could, just distinguish the case relied on by appellant Scott v. Harris, because he does place a lot of reliance on his argument that the video in this case negates the fact dispute identified by the judge. And as stated by appellant, that is an exception to the rule that there is no appealability of a qualified immunity denial unless it turns on a question of law. And so the video in this case is very unlike the video in that case, which utterly contradicted, blatantly contradicted the non-movement version of events. The video in this case is much more like a recent case from this court in 2014, Chacon v. Copeland, where the court identified three issues with the video. For instance, it was from a fixed vantage point that didn't clearly show the important parts. The distance from the video to the incident was long, and there was a murky picture because it was filmed at night. And those exact three elements are in this video. And the court in that case said that it left too many circumstances ambiguous and thus fell short of the clarity necessary to conclude that the non-movement allegations were blatantly contradicted, and the court upheld the denial of qualified immunity. Let me ask you what you think is potentially unclear about the video other than the picture. But insofar as the direction in that he was running, that seems relatively clear, though maybe a slight angle away from the police cruiser. I guess that's possible, which would be not directly towards the officer. But it does seem to me that what you're really talking about is not whether the video conclusively or not shows he ran towards the officer. That's pretty close, that the as bad as it is, the video does show that. But your real point, it seems to me, that there was no basis for the officer to feel he was being threatened in justifying the use of deadly force. That's right. And, in fact, the— Well, no, not just the second point, but the first point. Would you agree, which maybe you already can acknowledge here, that the video does, in all its poor quality, show that the deceased was running towards the officer? Not whether he was trying to run away, whatever else, I'd have to get in the head of the deceased, but that he was running in the direction of the officer such that somebody in that direction would have a basis to believe he was running towards him. I think that that's possible. That's one interpretation of the video. But what appellees are saying is that it doesn't matter if he was running at him or if he was fleeing. He still wasn't a serious enough threat that he should have been shot. Okay, thank you. The case you cited just before that question, what was that case again? It's Chacon v. Copeland. And there's another case actually very recent from this court in 2013, Ramirez v. Martinez, where a video again, it showed that there was a struggle between the officer and the nonmovement, but every element of it was not clear and, in fact, did not clearly show the punch being thrown that the officer used as justification. And this court dismissed that portion of the appeal, ruling that the contents of the video were too uncertain to discount the nonmovement under Scott. And so even though the Supreme Court ruled in Scott that a lower court can view the facts in a light depicted by the video, and we're arguing, well, it doesn't matter either way. Unless you find that the video blatantly contradicts Judge Rodriguez's opinion, you can still dismiss this appeal because the video, as we've said, is inconclusive. Well, unless that's not a material fact. Unless it's not material whether he was fleeing or not. And I think, you know, I won't argue that it's, I won't argue that one so much as what's material is whether or not he was a threat. That is the question under Tennessee v. Gardner in a case like this. You know, which brings me to another point, which is that the court also found a third fact dispute, and that was whether or not Sergeant Bellino was at all credible in his account of the, you know, the split seconds leading up and whether or not he was credible in his claim that he was being charged. And that fact is material under this court's ruling in 2001 in Bazan v. Hidalgo County, which cautioned courts in cases such as this that are deadly for self-defense cases to use particular care in evaluating the evidence because the officer knows that the only person likely to contradict his story is dead. Now, in this case, we have Mr. Moline, who stood and watched it as he videotaped it, and he testified twice in his deposition. I couldn't tell whether he was running at him or trying to run away past him. Okay. Do you believe that the law is that even if contrary authority existed, if there is, if it shows that it depends on the facts of each case, then it couldn't clearly establish that the conduct here violated the Fourth Amendment. I mean, do you believe that that's the law? If it shows that it's very factually particularized, that you wouldn't be able to show that in general there's a Fourth Amendment violation at any time this happens, and that because of that, then you couldn't say that you're not entitled to qualified immunity on the second prong. I'm using this case, Judge Manis v. Lawson, which is Judge Jones' opinion, and it says that thus far from clearly establishing the conduct was not unlawful, the controlling jurisdiction did not prohibit use of deadly force in these circumstances. However, it says even if contrary authority did exist about using deadly force, the cases together show that the area is one in which the result depends very much on the facts of each case, and therefore unless no reasonable officer could have believed deadly force was lawful, then the officer is nonetheless entitled to qualified immunity. And that seems to be that we might be in a murky area, or even if you say that it was unlawful, the issue is could any reasonable officer under the knowing the case law as it existed, no reasonable officer could have believed. So the issue isn't really there's no fact issue even on the other point that you say there's a fact issue on, because that's not even the issue. The issue is whether any reasonable that no reasonable author could have believed. I'm sorry it takes so long to ask the question. Well, you know, like we discussed, neither of us found a case exactly on point. Why doesn't that mean he automatically wins under our case law? Because there are numerous cases that would allow a reasonable, highly trained, as this officer was, supervisor, police officer, to understand that you cannot shoot and kill an unarmed teenager that doesn't present a serious threat. So, I mean, it's almost as if I'd do better if we assume for the purpose of the appeal that he was running at him and not fleeing, because we haven't found a case on fleeing. I think, you know, under Tennessee v. Garner and many, many cases since. But Tennessee v. Garner is not a qualified immunity case in that context. But we can say that it… It's setting out what the law is. It's not setting out qualified immunity. Yes, but I think that any police officer would know that the law was clearly established that you do not shoot an unarmed person who is not a threat to you. And, you know, I think in my short time left, I would just point out that the calls for service for this young man were that there was a boy walking in the road who needed help, and Bellino knew that. He also admitted that when he pulled up on the scene, he recognized that Jose Guerra was intoxicated or having a mental episode. So to Your Honor's point, contrast what happened to him with how police regularly react to inebriated young people at universities and colleges or party hotspots like 6th Street in Austin, where I'm from, or how the police regularly react to the mentally ill in downtown urban areas, also a big issue in Austin. If Sergeant Bellino's shooting of Jose Guerra was reasonable, police would be shooting countless drunk college students and mentally ill people. That's not what they do. They react with the intermediate use of force as a Pelley's expert directed that he should have, and so I respectfully request that the appeal be dismissed or that district court be affirmed. Thank you. Thank you very much. The trial court, I believe, disregarded the forensic evidence and the photographic evidence because it does not discuss it. The forensic evidence shows that, and the testimony of Dr. Box, that Mr. Guerra was shot three feet from Bellino, three feet, I assume, that is from the gun, three feet away. The entry wound went from front to rear without lateral deviation, without lateral deviation. He also was shot in the head, which, on top of the head, going front and back, which indicated that he was doing this, which Sergeant Bellino interpreted, he's going to tackle me while I'm backing up. The photographic evidence shows, in conjunction with Sergeant Bellino's statement, the first statement of his report, he stated, I'm retreating towards the back of my car as he is charging. And where does the body end, according to the photographic evidence? In the back of the car. It doesn't end away from the car. It ends up in the back of Sergeant Bellino's car where Sergeant Bellino is retreating. And that evidence is uncontradicted. You combine the two, and does Sergeant Bellino have a reasonable belief that he is not running away when he is ending up in the back of his car, but he is charging him. He is charging him. That's the belief that he has. It's reasonable. And Sergeant Bellino didn't end. They were on the pavement. He didn't end on the pavement. So are you saying that you agree that the question of whether or not he was fleeing is material, just that the fact is an undisputed one? Is that what you're saying? I don't follow you, Your Honor. I'm sorry. You agree that the question of whether or not Mr. Guerrero was fleeing is material. Do you agree that that's a material question? No, it's not material. It's immaterial. It's immaterial. It's immaterial in this case for the reasons that Judge Elrod mentioned, but for the reason that there is no evidence on which have placed Sergeant Bellino on notice that while he is coming towards him towards the back of the car, he's in reality fleeing. So it's immaterial, but he was fleeing. He was not fleeing. There's no evidence that he was fleeing. That's the point that I'm trying to make. If you look at the video, there's no evidence, and outside the video, Judge Rodriguez could not have come up with any factual basis that shows that he was actually fleeing, and that because he was actually fleeing that Sergeant Bellino would have noticed that he was in fact fleeing because there is no way Sergeant Bellino could have known that he was fleeing when he's charging and following him to the back of the car. It just doesn't make any sense. But the forensic evidence, undisputed forensic evidence, shows the contrary. It's a difficult case. It's a close case. Judge Rodriguez stated it's a close case because the way I see the case is this. There are two lines of cases. Those where the individual is armed, a knife and a gun. On those cases, I have read them, and nobody said, you should dodge, jump, when he points a gun, evade. No. The court says at that point in time the police officer has a right to shoot, and they hardly say because he can shoot you. Not that he can miss because, theoretically speaking, in many of these shootings, there are missed shots. In this one, there was a missed shot. But the fact that the person is armed immediately evokes the dangerousness of the situation. It doesn't have to be real. In fact, he doesn't have to shoot the gun. That's one extreme. The other extreme is when the police officer has a reasonable belief that the man is armed, when he's not, and there's qualified immunity on that as long as the belief is reasonable. This case falls right in the middle, and there's no cases that would have told Sergeant Bellino that his conduct was unlawful. Why? Because the person is not clearly armed. Should we make case law to tell the next officer even if this case falls on the prong too? Well, the law is not clearly established as to whether the law doesn't say that you have to have a gun or a weapon. Or, as a matter of fact, the law doesn't say that you have to have a reasonable belief. The law says that you have to have a reasonable belief that there was a threat. And in this case, the threat was that not by choice he was in the middle of the pavement with a person that decides to charge him when he's being pointed a gun. What is innocent about that? After Bellino had told him, get on the ground before or I shoot your F ass. Okay, I think we have your answer to the question. And your time has expired. Thank you. Thank you. The court will stand in recess.